UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| D.S., by and through R.S. and E.S., ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | No. 3:20-CV-240-CEA-DCP |
| v. ) | |
| ) | |
| KNOX COUNTY, TENNESSEE ) | |
| ) | |
| Defendant/Counterclaimant. ) | |

### REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 46] of the District Judge.

Now before the Court is Plaintiff's Motion for Attorney's Fees [Doc. 38]. Defendant responded in opposition [Doc. 42], and Plaintiff filed a Reply [Doc. 45]. The parties have also filed supplemental briefs [Docs. 47, 48] that the Court has considered. Accordingly, for the reasons further explained below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 38**] be **GRANTED IN PART AND DENIED IN PART.**

I. ANALYSIS

In the Motion for Attorney's Fees, Plaintiff requests fees for two attorneys. Specifically, Attorney Justin Gilbert spent 170.75 hours in this case and requests $450 per hour, which results in an award of $76,837.50 in attorney's fees. In addition, Attorney Gilbert seeks reimbursement for his expenses (*i.e.*, printing, court filing fee, and hotel rooms) in the amount of $1,476.99. Thus, Plaintiff seeks a total award for Attorney Gilbert in the amount of $78,314.49.

With respect to Attorney Jessica Salonus, she spent 190 hours litigating this case and requests $300 per hour. In addition, Attorney Salonus billed 25 hours for traveling and requests

$150 per hour (half rate for travel time). Thus, Plaintiff requests $60,750.00 in attorney's fees for Attorney Salonus. Further, Attorney Salonus incurred expenses (*i.e.*, hotels, meals, mileage, copies, and transcripts of depositions) in the amount of $8,062.88, and therefore, Plaintiff seeks a total amount of $68,812.88 for Attorney Salonus's fees and expenses.[1] Finally, Plaintiff seeks continuing costs for private placement in the amount of $15,400.00.[2]

As an initial matter, the parties agree that Plaintiff is the prevailing party under the Individuals with Disabilities Education Act ("IDEA") and is entitled to attorney's fees. Thus, the Court must determine whether the requested amount of attorney's fees is reasonable. In making this determination, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

---

[1] Defendant states that Attorney Salonus's total amount of attorney's fee is not correct and that the total amount should be $68,570.05. [Doc. 42 at 11-12]. Plaintiff responds that the total figure of $68,812.88 is correct. Plaintiff states that Attorney Salonus's Declaration shows the exact hours multiplied by her rate and then adds the expenses, for a total amount of $68,812.88. Plaintiff states that the $242.83 difference is from travel expenses reflected in receipts attached to Attorney Salonus's Declaration, which were not necessarily included as expenses in her software billing entries. [Doc. 45 at 7 n.1].

[2] Plaintiff asserts that the total costs for private placement is $22,650.00, but this amount includes the tuition for the 2019-2020 school year at $7,250.00, which the Court has already granted.

2

*Id.* at 415-16. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 416 (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

With the above analysis in mind, the Court will now turn to Defendant's objections. First, Defendant objects to the tuition costs for the 2020-2021 and 2021-2022 school years. Second, Defendant states that Plaintiff was not successful in all her claims as the District Judge found that it did not violate Section 504 of the Rehabilitation Act ("Section 504") or Title II of the Americans with Disabilities Act ("ADA"). Third, Defendant states that counsels' hourly rates are excessive. Fourth, Defendant argues that many of counsels' billing entries are duplicative. Fifth, Defendant states that counsel used quarter-hour billing, which is disfavored in this District. Finally, Defendant argues that counsels' billing entries include clerical work.

The Court will address Defendant's objections separately, unless otherwise noted.

A.  **Costs of Private Placement**

Plaintiff argues that the costs of her private placement at Little River Montessori have continued to accrue over the course of this litigation. Plaintiff states that on May 7, 2020, the ALJ awarded reimbursement of the tuition costs at Little River Montessori for the 2019-2020 school year at $7,250.00, which was affirmed by the District Judge. Plaintiff states that as a result of Defendant's appeal of the ALJ's opinion, and this case extending to the 2020-2021 and 2021-2022 school years, she has incurred additional tuition costs beyond the time of the ALJ's Final Order. Thus, in total, Plaintiff seeks the following tuition costs: (1) $7,250.00 for the 2019-2020 school year; (2) $7,700.00 for the 2020-2021 school year, and (3) $7,700.00 for the 2021-2022 school year.

Defendant acknowledges that it is liable for the costs for the 2019-2020 school year but argues that Plaintiff is not entitled to continuing tuition costs. Defendant states that the ALJ's

3

Case 3:20-cv-00240-CEA-DCP   Document 50   Filed 02/03/22   Page 3 of 20   PageID #: 4532

Final Order, dated May 7, 2020, ended Plaintiff's ability to claim further reimbursement of private schooling. Defendant argues that the cases Plaintiff cites in support of her argument are inapposite. Defendant explains that in *L.H. v. Hamilton Cty. Dep't of Education*, No. 1:14-CV-00126, 2018 WL 6069161, (E.D. Tenn. Nov. 20, 2018) and *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), the students appealed the administrative decisions that concluded the individualized education plans ("IEPs") were appropriate. Defendant states that, therefore, in those cases, the parents were faced with a choice to go along with a detrimental IEP or find appropriate placement.

Defendant argues that, here, Plaintiff achieved victory at the administrative level, and from the moment that the ALJ ruled, the possibility of Plaintiff receiving free appropriate public education ("FAPE") was no longer in question. Defendant asserts that Plaintiff was not faced with the untenable choice of a detrimental IEP or pay for appropriate placement. Defendant states that the Sixth Circuit has noted that in order to avoid reimbursing parents, schools should give a FAPE, which is what Defendant did following the ALJ's decision. Defendant states that while its appeal was pending, its staff reached out to Plaintiff's family to begin planning for her enrollment in the 2020-2021 school year, but Plaintiff declined to attend Knox County Schools, even in the placement that the ALJ determined was appropriate. Defendant asserts that there is no legal basis for it to pay for the continuing private placement.

Plaintiff maintains that she is entitled to continuing private placement costs. Plaintiff states that she has satisfied the two requirements for reimbursement: (1) the public school violated the IDEA, and (2) the private school is appropriate under the IDEA.

As the parties acknowledge, the ALJ awarded Plaintiff private tuition and fees for the 2019-2020 school year in the amount of $7,250, which the District Judge affirmed. [Doc. 37 at 27]. Plaintiff now seeks additional tuition costs during the pendency of Defendant's appeal. The

Supreme Court has acknowledged that "parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement." *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985)). As the District Judge noted in the Memorandum Opinion and Order, "Reimbursement of private school tuition is an appropriate remedy if, ' (1) the public school violated the IDEA and (2) the private school is appropriate under the IDEA.'" [Doc. 37] (quoting *L.H. v. Hamilton Cty. Dep't of Education*, 900 F.3d 779, 791 (6th Circ. 2018)) (other citations omitted).

The Court recommends that Plaintiff be reimbursed her continuing placement costs through the appeals process. As the Supreme Court has explained:

> [A]n administrative decision in favor of parents who had placed their child in a private school after they rejected a proposed IEP constitutes an agreement by the state to the change of the child's placement, making the new, private school placement the current educational placement of the child.

*Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 591 (5th Cir. 2009) (citing *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 371-72 (1985)). The Supreme Court has declined to take the position that the reimbursement is only available for the period of the challenged IEP. *Sudbury Public Sch. v. Mass. Dep't of Elementary and Secondary Educ.*, 762 F. Supp. 2d 254 (D. Mass. 2010) (citing *Burlington*, 471 U.S. at 372-73). As one court explained:

> The Supreme Court's decision in *Burlington* must be read has having refined the First Circuit's holding with respect to the duration of the 'stay put' payments. Parent may be awarded reimbursement for the pendant placement even though the time period of the initial IEP has passed and even though a separate IEP has been proposed for the 2010-2011 school year.

*Id.*; *see also L.H.*, 2018 WL 6069161, at *3 ("[I]t does not follow to say that once a violation of the IDEA is found, a child must be pulled from a private placement and enrolled in public school

while the parties appeal the issue of a proper school placement."). Accordingly, the Court recommends Plaintiff be awarded the additional tuition costs for the 2020-2021 and 2021-2022 school years.[3]

B. **Prevailing Party**

Defendant argues that Plaintiff's fee request should be partially reduced to reflect that Plaintiff did not prevail on all her claims. Defendant explains that Plaintiff brought claims pursuant to Section 504 of the Rehabilitation Act and Title II of the ADA. Defendant argues that Plaintiff's attorneys do not appear to have separated the three claims in their billable hours or the descriptions of legal activities and research. Thus, Defendant argues that it is impossible to identify any specific hours to reduce but requests that the Court take the level of success into account when determining the overall reasonableness of the award requested.

Plaintiff states that courts have dismantled this argument numerous times, including recently in *L.H. v. Hamilton Cty. Dep't of Educ.*, 356 F. Supp. 3d 713, 725 (E.D. Tenn. 2019). Plaintiff argues that it was certainly reasonable in this matter for her counsel to bring IDEA, Section 504, and ADA claims because the claims arose out of the same common set of facts.

The Supreme Court has stated that when "plaintiff's claims for relief involve a common core of facts or [are] based on related legal theories," courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the

---

[3] Plaintiff is only entitled to her reasonable costs associated with her education at Little River Montessori School ("Little River"). *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 770 (6th Cir. 2001) ("Total reimbursement of the costs of [the private school] education will not be appropriate if the court determines such costs to be unreasonable."). The District Judge found reimbursement in the amount of $7,250.00 for the 2019-2020 school year to be appropriate. [Doc. 37 at 33]. The Court notes that Little River's tuition for the 2020-2021 and 2021-2022 school years was $7,700.00 each year—a slight increase from the amount previously found to be appropriate. Defendant, however, has not objected to the reasonableness of the tuition increases. In any event, however, the Court does not find an increase of $450 to be unreasonable.

6

Case 3:20-cv-00240-CEA-DCP   Document 50   Filed 02/03/22   Page 6 of 20   PageID #: 4535

litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Supreme Court explained that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* Other courts have explained that "[t]his rule exists because litigation is not an exact science: Lawyers cannot precisely preordain which claims will carry the day and which will be treated less favorably." *L.H.,* 356 F. Supp. 3d at 725 (other citations omitted).

As mentioned above, Defendant argues that the fee should be partially reduced due to Plaintiff's unsuccessful claims. In light of the above authority, the Court declines to recommend specific reductions based on the unsuccessful claims. The Court notes that Plaintiff's response to Defendant's dispositive motion analyzed the Section 504 and ADA claims for only one and a half pages and argued that these claims were similar to the IDEA claims. Even though the Court held that the Section 504 and ADA claims require proof of gross misjudgment or bad faith, in this specific case, all claims arose out of a common core of facts. Accordingly, the Court declines to recommend specific reductions based on Defendant's objection.[4]

## C. Hourly Rates

As mentioned above, Attorney Gilbert requests $450 per hour and Attorney Salonus requests $300 per hour. In support of these rates, Attorney Gilbert filed a Declaration, stating as follows:

> 29. As a lawyer of 26 years, focusing on the narrow but complex area of special education, I believe my requested rate of $450, and that of my co-counsel, Jessica Salonus, of $300 per hour, are reasonable and in line with Eastern District rates. For me, that is a

---

[4] Defendant acknowledges that it cannot identify specific hours to reduce based on its objection, but it suggests that the Court take into account the level of Plaintiff's success in determining the overall reasonableness. The Court, however, has considered the reasonableness of the requested fee award in relation to the degree of success obtained as the Sixth Circuit has instructed. *Isabel*, 404 F.3d at 416 (finding the most critical factor for the court to consider in relation to a fee petition is the degree of success obtained).

7

> $50 increase since my accepted rate of $400 in 2019. In 2019, in *L.H. v. Hamilton Cnty Dep't of Educ.*, 356 F. Supp. 3d 713 (E.D. Tenn. 2019) and in *S.P. et v. Knox County, et al.*, No. 3:17-cv-100-PLR-DCP, Ms. Salonus and I were approved at the rates of $400 and $275 per hour, respectively. Thus, the requested $450 ($50 more than in L.H.) represents an 11.1% percent [sic] increase in the more than two years after L.H.

[Doc. 38-1 at ¶ 29].

Attorney Salonus also filed a Declaration, stating as follows:

> 17. I am requesting the rate of $300 per hour for myself. I have been using that rate the past two years (2019-2021) for clients who can pay my attendance at IEP meetings and for smaller matters for special education. I believe that rate is appropriate for this line of work and my knowledge and skill. I believe it is particularly appropriate for Decker S.'s case given its added degree of difficulty, contingency, risk, and fact that we did not require any payment for attorney fees from Decker S.'s family regardless of result.
>
> 18. This rate of $300 hourly is also the rate used to calculate my fees in a number of other settlements which have been court-approved on behalf of minors in the past year. Most recently, this includes a Petition for Minor Approval before Chancellor Butler in Madison County in February 2021. The $300 per hour rate is the rate I use in settlements with school districts since January 2019, when the school district pays my time.
>
> 19. Additionally, I submit that this rate is reasonable historically. Back in January of 2019, in a case involving most of the same issues, Mr. Gilbert was approved at $400 per hour and I was approved for $275 per hour *L.H. v. Hamilton Cty. Dept. of Educ.*, 356 F. Supp. 3d 713 (E.D. Tenn. 2019).

[Doc. 39 at ¶ 17-19]. In addition, in support of her fee request, Plaintiff filed Dean Rivkin's Declaration, providing, in relevant part, as follows:

> **The customary fee**: In view of the skill, experience, and reputation of the lawyers for D.S., the fees requested fall well within the customary fees charged by lawyers with comparable credentials. Because no ordinary market exists for special education lawyers in Tennessee, the key criterion here is to recognize a rate that will attract lawyers to this highly specialized and complex area of public

> interest practice. Congress recognized the importance of attracting "private attorneys general" to areas of national need. Lawyers are not flocking to IDEA/504/ADA litigation; to the contrary. The fees requested here are necessary to attract lawyers like Mr. Gilbert and Ms. Salonus to take on special education cases. Those who do should be awarded a fair fee, and the rates requested here of $450 and $300, respectively, are more than fair in today's relevant legal market. Given their past statutory fee awards, (including $400 and $275 in the *L.H. v. Hamilton County* case in 2018), their 2021 rates, the operative date for determining statutory fee awards, fall well within the range of increases that lawyers make to ensure that their practices are financially able to persist.

[Doc. 31-3 at ¶ 15(d)]. In addition, Dean Rivkin notes that counsel accepted this case on a contingency fee. [*Id.* at ¶ 15(f)]. Finally, Plaintiff submitted the Declaration of Donna Mikel, stating in part, as follows:

> 19. Given the risk of full contingency, the length of representation (multiple years), the complexity of the subject matter, facing dueling experts, the lack of practitioners in our area willing to accept these cases for parents of children with disabilities, the 26 years and 13 years of experience of Gilbert and Salonus, and the complete relief obtained at both the ALJ-level and District-Court level, it is my opinion that the $450 and $300 per hour rates sought by Mr. Gilbert and Ms. Salonus are reasonable, appropriate and necessary. I have been able to review the timesheets for billing judgment, along with the substantive briefings to the District Court. The briefings are well written and the time necessary and reasonable for the excellent result obtained.
>
> 20. I do not know of any other private practitioners who reside in Chattanooga or Knoxville besides Mr. Gilbert [who] would have both the legal experience under the IDEA, and who could shoulder the expenses and litigation risk of a full contingent representation in reliance upon fee-shifting statutes to succeed in Decker's case. This is an enormous benefit to our community to have a practitioner willing to commit to complex educational manners entirely dependent upon civil rights fee-shifting statutes. Accordingly, I believe the rate and fees requested by both Mr. Gilbert and Ms. Salonus are necessary to retain and encourage them to take on this type of representation.

[Doc. 38-6 at ¶¶ 19-20].

Defendant argues that Dean Rivkin's and Donna Mikel's Declarations fail to provide any information as to what the customary attorney rate is in similar cases. Defendant states that Dean Rivkin does not provide any specifics as to the customary hourly rate, and he has not been involved in special education litigation since 1997. Defendant argues that Dean Rivkin's Declaration is almost identical to the one he provided in *Knox County v. M.Q.,* No. 3:20-CV-173-DCLC-HBG. Defendant states that both Declarations include statements that the cases precluded the attorneys from taking on other clients, which obviously is not true given that the instant case was litigated at the same time as *Knox County v M.Q.,* No. 3:20-CV-173-DCLC-HBG. Defendant adds that Donna Mikel has no experience in special education litigation. Defendant argues that the requested hourly rates far exceed the upper limits of fees recently awarded by this District in other complex litigation. Defendant requests that the Court reduce Attorney Gilbert's hourly rate to $275 and Attorney Salonus's hourly rate to $250 given their level of experience.

Plaintiff replies that Defendant's suggested reductions are less than what her counsels were previously awarded and that Defendant simply repeats the arguments that were already addressed in *L.H.*, 356 F. Supp. at 713.

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is the legal community within the court's territorial jurisdiction or venue. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citing *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Id.* (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *abrogated on other grounds by*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

The Court of Appeals has explained this distinction well:

> The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Coulter*, 805 F.2d at 149; *see also Lamar Adver. Co. v. Charter Township of Van Buren*, 178 F. App'x 498 (6th Cir. 2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation.").

In the instant matter, the undersigned notes that United States Magistrate Judge H. Bruce Guyton recently entered a Report and Recommendation addressing the same arguments as above. *Knox County v. M.Q.,* 3:20-CV-173-DCLC-HBG [Doc. 43]. In the Report and Recommendation, Judge Guyton found Defendant's suggested rates too low and Plaintiff's counsels' hourly rates too high for this District. [*Id.* at 7]. Judge Guyton found that the reasonable hourly rates for Attorney Gilbert's work and Attorney Salonus's work are $425 and $290, respectively. [*Id.*]. Judge Guyton reasoned that in 2019, Attorney Gilbert was awarded $400 per hour and that Attorney Salonus was awarded $275. [*Id.*] (citing *L.H.,* 356 F. Supp. 3d at 724) ("The Court will calculate the lodestar rate according to Plaintiffs' attorneys' current billing rates—$400 for Justin Gilbert, and $275 for Jessica Salonus."). Given the passage of time (*i.e.*, approximately 3% per year), Judge Guyton concluded that $425 per hour was reasonable for Attorney Gilbert and $290 per hour was reasonable for Attorney Salonus. Accordingly, the Court finds Judge Guyton's Report and Recommendation persuasive and will recommend the same rates (*i.e.,* $425 per hour for Attorney Gilbert and $290 per hour for Attorney Salonus) for the same reasons.

### D. Hours Billed

As mentioned above, Defendant asserts three primary objections to the hours billed. First, Defendant argues that the duplicative fees should be reduced. Second, Defendant objects to counsels' use of quarter-hour billing and to counsels' billing for secretarial tasks. The Court will address these objections in the order in which they were raised.

#### 1. Duplicative Fees

Defendant acknowledges that when a party is represented by two attorneys, some overlap of billing hours is inevitable. Defendant argues, however, that here, there was duplicative work that should be eliminated. Defendant states that both attorneys attended almost every deposition, every hearing date, and both billed for their full hourly rate for attending the due process hearing.

For example, Defendant argues that Attorney Salonus billed three (3) hours for assisting in the depositions of Plaintiff's classroom teachers, but Attorney Gilbert billed three and a half hours for taking those depositions. Defendant further states that Attorney Salonus billed 2.75 hours for defending a deposition of Plaintiff's parents, but Attorney Gilbert billed two (2) hours for attending the depositions. Defendant argues that both attorneys billed their full rate for the entirety of the due process hearing when only Attorney Gilbert addressed the tribunal and that the attorneys billed extensive hours for preparing witnesses and cross examinations. Based on these objections, Defendant requests the Court to reduce Attorney Gilbert's hours by 9.5 hours and Attorney Salonus's hours by 20.5 hours. Finally, Defendant argues that the attorneys collaborated on the pleadings filed in this action and that some of the work is duplicative and should be reduced by fifty percent.

With respect to the depositions, Plaintiff argues that the parties only deposed the special education teacher, the general education teacher, and Plaintiff's parents, all of whom were key

witnesses in this case. Plaintiff states that these depositions totaled approximately six (6) hours. Plaintiff argues that special education cases often involve extensive document production with all the child's educational records and correspondence between the parties, and therefore, it was more efficient that both lawyers be in attendance to ensure necessary exhibits and points were raised.

Further, Plaintiff states that while Defendant objects to Attorney Salonus's presence at the entire due process hearing, her presence was necessary. Plaintiff states that co-counsel is constantly assisting with the trial proceedings and the client.

In addition, with respect to Defendant's arguments regarding the pleadings, which largely relate to the findings of fact and conclusions of law as well as the dispositive motions in this case, Plaintiff states that Defendant ignores the importance of this aspect of the case and the degree of difficulty involved with preparing such documents.

"There is no hard and fast rule allowing or preventing more than one attorney from attending a deposition, hearing, or trial on behalf of a prevailing party." *Gradisher v. Check Enf't Unit, Inc.*, No. 1:00-CV-401, 2003 WL 187416, at *4 (W.D. Mich. Jan. 22, 2003); *see also Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015), (finding work was not duplicative when two attorneys attended the depositions), *aff'd*, 659 F. App'x 820 (6th Cir. 2016). The Court has reviewed the history of this case, including the Memorandum Order and Opinion [Doc. 37], and the Court does not find that this case was so complicated that it required the presence of two attorneys at each deposition. Plaintiff states that the depositions lasted six (6) hours in total, but the Court finds the duration of the depositions supports a finding that two attorneys were not necessary. Further, the facts of this case were straightforward, and Plaintiff only conclusory asserts that this case involved significant document production. *Baker v. Nat'l Seating Co.,* No. 3:05-CV-187, 2006 WL 8442688, at *2 (E.D. Tenn.

Mar. 28, 2006) ("The Court agrees with the defendant that the attendance of both of the plaintiff's attorneys at discovery depositions was duplicative."); *see also Gradisher*, 2003 WL 187416, at *4 (finding that there was no need for two attorneys to attend depositions and hearings because the legal issues were not overly complex, only a few depositions were taken, and only a modest number of documents were involved).

In determining how much to reduce for both attorneys attending depositions, the Court has reviewed Defendant's chart provided in its Response. [Doc. 42 at 13]. It appears Attorney Salonus billed for 3.0 hours for attending the depositions of the general education and special education teachers on November 19, 2019, while Attorney Gilbert billed 3.5 for taking these depositions. In addition, on November 20, 2019, Attorney Salonus billed 2.75, for defending the parents' depositions, while Attorney Gilbert billed 2.0 for attending the parents' deposition. Accordingly, based on Defendant's chart, the Court **RECOMMENDS** that 2.0 hours be deducted from Attorney Gilbert's time and that 3.0 hours be deducted from Attorney Salonus's time.

The Court will not recommend any reductions for the time spent preparing for the depositions. Again, relying on Defendant's chart in its Response, s*ee* [Doc. 42 at 13-14], Attorney Gilbert and Attorney Salonus spent approximately 14.25 hours total in preparing for the four depositions. The Court does not find this amount of time excessive for deposition preparation.

With respect to Defendant's argument relating to counsels' attendance at the due process hearing, the Court disagrees with Defendant. Trials are much different than depositions, and often, the presence of two attorneys is necessary. As Plaintiff explains, "[C]o-counsel [is constantly] measuring witnessing, assessing and selecting proof (often as the proof develops in the hearing), selecting witnesses, working with experts, making suggestions for examination, responding to the tribunal, debriefing the day, planning the next one, and managing the client in a highly emotional

14

Case 3:20-cv-00240-CEA-DCP Document 50 Filed 02/03/22 Page 14 of 20
PageID #: 4543

process, etc." [Doc. 45 at 8]. Thus, the Court will not recommend Attorney Salonus's time spent attending the due process hearing be reduced.

Finally, Defendant states that Plaintiff's attorneys collaborated together on the pleadings in this action. Defendant states that with respect to the pleadings and the discovery requests, it appears one attorney primarily drafted such documents with collaboration on the final product. Defendant argues, however, that with respect to the proposed findings of fact and conclusions of law submitted to the ALJ and the response to Defendant's motion for judgment on the pleadings, the attorney's fees are clearly duplicative.

The Court has reviewed Attorney Gilbert's and Attorney Salonus's billing entries, and the Court finds that reductions are not appropriate. The Court notes that there are sixteen (16) billing entries relating to a pretrial brief, the findings of fact and conclusions of law, the motion for judgment to affirm the ALJ, and the response to Defendant's motion for judgment on the administrative record. Upon review, the Court finds that the time billed by both attorneys is reasonable, especially in light of the success achieved in this case. The Court further acknowledges that pretrial briefs, findings of fact and conclusions of law, and drafting and responding to dispositive motions are often time-consuming tasks that relate to the most important aspects of the case. Here, the Court does not find such work was duplicative. Accordingly, the Court will not recommend reductions based on Defendant's objection.

### 2. Quarter-Hour Billing and Secretarial Tasks

Defendant objects to counsels' use of quarter-hour billing and states that it has identified over forty (40) tasks billed at .25 hours that should have taken less than fifteen (15) minutes of counsels' time. For example, Defendant states that on December 4, 2020, Attorney Gilbert billed fifteen (15) minutes to review a two-page motion for an extension of time and another fifteen (15)

minutes to update his calendar deadline. Defendant relies on *L.H.*, 356 F. Supp. 3d at 727, stating that the court reduced the amount awarded to Attorney Gilbert and Attorney Salonus by 7.5% for this same reason.

In addition, Defendant argues that both counsels include some billable hours for secretarial tasks, including compiling records, redacting records, correspondence with witnesses regarding scheduling, preparing exhibits, and preparing pleadings for filings. Defendant argues that most of these tasks are grouped with other legal activities, so it is difficult to parse out what amount of time was spent purely on those disallowed activities. Defendant requests that the Court reduce the overall hours by 15% for the use of quarter-hour billing and the inclusion of non-legal work billed at full litigation rates.

Plaintiff states that the Defendant makes a blanket assumption about quarter-hour billing in that attorneys bill up, but never down, but this assumption is wrong. Plaintiff states that her attorneys use software to keep track of their billing entries and that if an item is trivial, it is not inputted. Plaintiff states that other entries are rounded down to reduce billing entries. For instance, if a matter took 35 minutes, it would be recorded as .5 and not the .75 that Defendant asks the Court to assume. Plaintiff argues that it is not appropriate for Attorney Gilbert and Attorney Salonus to suffer across the board cuts to every single time entry for their consistent use of a quarter-hour system when they do not record nominal time and also round time down. Finally, Plaintiff states that Defendant cites a handful of entries by Attorney Salonus, characterizing them "secretarial," but instead they are legal functions.

The Court will first address counsels' use of quarter-hour billing and then turn to Defendant's objections regarding the alleged secretarial tasks. "Whether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Yellowbook Inc. v. Brandeberry*,

16

708 F.3d 837, 849 (6th Cir. 2013). "This discretion arose from concern that quarter-hour increments result in over-billing." *Hubbell v. FedEx Smartpost, Inc.*, No. 14-13897, 2018 WL 1392668, at *4 (E.D. Mich. Mar. 20, 2018) (citing *Yellowbook*, 708 F.3d at 849), *aff'd*, 933 F.3d 558 (6th Cir. 2019)). "In this District in particular, the use of quarter-hour billing is disfavored." *L.H. v. Hamilton Cty. Dep't of Educ.*, 356 F. Supp. 3d 713, 727 (E.D. Tenn. 2019). "District courts typically account for quarter-billing inaccuracy by reducing the number of hours worked by a percentage amount." *L.H. v. Hamilton Cty. Dep't of Educ.,* 356 F. Supp. 3d 713, 727 (E.D. Tenn. 2019).

On the other hand, however, some "[c]ourts have declined to find the practice of billing in quarter hour increments per se unreasonable." *King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, at *8 (E.D. Mich. Dec. 2, 2021) (other citations omitted). Courts will impose reductions if the quarter-hour billing entries appear "suspect" or "fee enhancing." *Id.* (citations omitted). For instance, if the "billing records were replete with quarter-and half-hour charges for tasks that likely took a fraction of the time (*e.g.*, drafting letters and emails, telephone calls, and intra-office conferences)," courts will impose restrictions. *Id*. "In comparison, district courts have declined to reduce charges due to quarter-hour billing where the attorney's time sheets do not reflect entries equating to menial takes that would require less than fifteen minutes to complete or when the law firm's regular practice is to bill in this manner." *Id.*

Recently, in a similar case, *Knox County v. M.Q.,* Judge Guyton declined to recommend reductions based on Attorney Gilbert's and Attorney Salonus's use of quarter-hour billing. Judge Guyton reasoned that Attorney Gilbert and Attorney Salonus used software to keep track of their time, the evidence showed that they rounded their time down and not up, and they excluded compensable time from their entries. 3:20-CV-173-DCLC-HBG [Doc. 43].

The Court has reviewed the above authority, coupled with Attorney Gilbert's and Attorney Salonus's billing entries in this case, and the undersigned will not recommend any reductions based on Defendant's objection to quarter-hour billing. Similar to Judge Guyton's reasons, in the present matter, Attorney Gilbert and Attorney Salonus use software to keep track of their time. In addition, Attorney Gilbert and Attorney Salonus state that they round their time down and not up. For example, Attorney Salonus states as follows:

> Like Mr. Gilbert, my time is kept in quarter hours which is my standard practice on all cases. I enter all time through my billing software (CLIO) either on my computer or my phone application. In doing so, I round up *or down* so the entries are accurate. And for tasks that require less than fifteen minutes, they are most often not even recorded. And again, in exercising billing judgment, I often cut my hours or do not record small tasks so as to keep my billing reasonable and prudent. Therefore, I concur with Mr. Gilbert that although we use quarterly billing, it does not result in excessive billing, as in actuality, my time is rounded down too, not recorded for small tasks, or reduced altogether.

[Doc. 39 at ¶ 21].

Attorney Gilbert and Attorney Salonus have also not requested all their compensable time. For example, in one entry dated July 23, 2019, Attorney Gilbert worked on the due process complaint for 1.25 hours but decided against his edits, so he billed zero (0) hours. [Doc. 38-1 at 14]. In addition, Attorney Gilbert and Attorney Salonus did not bill for any time drafting the Reply associated with the instant Motion. [Doc. 45 at 4] ("Not only is time often rounded down, but Plaintiffs often forego time. This brief, consisting of approximately 3.0 hours, is one such example."). Finally, the Court has reviewed Attorney Gilbert's and Attorney Salonus's invoices, and the Court does not find that they are replete with fee-enhancing entries. Accordingly, the Court declines to recommend reductions based on Attorney Gilbert's and Attorney Salonus's use of quarter-hour billing.

Defendant also objects to seven (7) entries by Attorney Salonus as secretarial tasks. Defendant states that the secretarial tasks are grouped with legal activities, making it difficult to parse out what amount of time was spent purely on such disallowed activities. Defendant suggests a percentage reduction to account for these tasks and quarter-billing.

District courts within the Sixth Circuit have reduced attorney's hours spent on purely clerical work. *See Clark v. Shop24 Global LLC,* No. 2:12-cv-802, 2016 WL 3639893, at *5 (S.D. Ohio July 8, 2016) (recommending clerical work be deducted from the attorney's fee award), *report and recommendation adopted in part by,* 2016 WL 5533585 (S.D. Ohio. Sept. 30, 2016). Courts explain that "purely clerical or secretarial activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." *Gibson v. Scott*, No. 2:12–cv–1128, 2014 WL 661716 (S.D. Ohio Feb. 19, 2014) (other citations omitted).

The Court has reviewed the specific entries that Defendant objects to and finds the time compensable. Specifically, Defendant objects to seven (7) entries, but many of these entries contain legal functions that are appropriately conducted by an attorney. The remaining entries also contain legal tasks "or involved such little time that the Court would be turning into a green shade accountant if reductions were recommended." *Knox County v. M.Q.,* 3:20-CV-173-DCLC-HBG [Doc. 43 at 13] (quoting *Ne. Ohio Coal. for the Homeless v. Busted*, 831 F.3d 686, 703 (6th Cir. 2016)) ("[I]n assessing fees, district courts are not required to act as green-shade accountants and achieve auditing perfect but instead must simple do rough justice") (other quotations omitted). Accordingly, the Court declines to recommend further reductions.

## V. CONCLUSION

Accordingly, for the reasons explained above, the Court **RECOMMENDS**[5] that Plaintiff's Motion for Attorney's Fees [**Doc. 38**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** the following:

1. Attorney Gilbert be awarded $425 per hour and that 2.0 hours be deducted for his attendance at the depositions for a total amount of $71,718.75. in attorney's fees, plus costs in the amount of $1,476.99;[6] and

2. Attorney Salonus be awarded $290 per hour and that three (3) hours be deducted for her attendance at the depositions for a total amount of $54,230.00 in attorney's fees, plus costs in the amount of $8,062.88;[7] and

3. Plaintiff be awarded her additional tuition costs for the 2020-2021 school year and the 2021-2022 school year in the amount of $15,400.00.

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[6] The Court arrived at this figure as follows: 170.75 hours minus 2.0 hours multiplied by $425 per hour, which equals $71,718.75.

[7] The Court arrived at this figure as follows: 190 hours minus 3 hours multiplied by $290 per hour, which equals $54,230.00