# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

D.S. by R.S. and E.S.,                    )
                                          )
    *Plaintiff/*              )          Case No. 3:20-cv-240
    *Counterclaim Defendant,*  )
                                          )          Judge Atchley
v.                                        )
                                          )          Magistrate Judge Poplin
KNOX COUNTY, TENNESSEE,                   )
                                          )
    *Defendant/*              )
    *Counterclaimant.*         )

## MEMORANDUM OPINION AND ORDER

On February 3, 2022, Magistrate Judge Debra C. Poplin filed her Report and Recommendation [Doc. 50], recommending that Plaintiff's Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] be granted in part and denied in part. Defendant Knox County ("KCS") filed a timely Objection [Doc. 51], to which Plaintiff D.S. responded [Doc. 52]. The Court has carefully considered Plaintiff's Motion [Doc. 38] and Reply [Doc. 45], Defendant's Response [Doc. 42], the Report and Recommendation [Doc. 50], Defendant's Objection [Doc. 51], Plaintiff's Response [Doc. 52], and other materials in the record. The Court has reviewed *de novo* the portions of the Report and Recommendation to which Defendant has properly objected. For reasons that follow, the Report and Recommendation [Doc. 50] will be **ACCEPTED** and **ADOPTED IN PART** and Plaintiff's Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND

The facts in this case are set forth in the Court's Memorandum Opinion and Order [Doc. 37], and, without objection, in Magistrate Judge Poplin's Report and Recommendation

[Doc. 50]. Relevant terminology is defined therein. Briefly, Plaintiff Decker S. is a young girl with disabilities who was formerly enrolled in Knox County Schools. D.S. filed a due process complaint challenging the IEP. Following an administrative ruling in her favor, this action was filed to recover attorney's fees and litigation costs arising from that litigation.

A Final Order on Plaintiff's due process complaint was entered on May 7, 2020. [Doc. 34]. The ALJ found that KCS's proposed IEP for the 2019-2020 school year would have denied D.S. a FAPE and was more restrictive than necessary under the IDEA, Section 504, and Title II of the ADA. [*Id.* at 32]. The ALJ further found that D.S.'s placement at Little River Montessori School offered D.S. not only an inclusive education with non-disabled peers, but avoided eight daily physical transitions that KCS's IEP required. [*Id.* at 33]. He therefore held that private placement was appropriate and D.S.'s parents were entitled to tuition reimbursement. [*Id.*].

The ALJ could not, however, award attorney's fees and costs. *See* 20 U.S.C. § 1415(i)(3)(B)(i) ("[I]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . ."); *Zipperer ex rel. Zipperer v. Sch. Bd. of Seminole Cnty.,* 111 F.3d 847, 851 (11th Cir. 1997) ("[T]he district court, rather than the administrative agency, has jurisdiction to award fees."). D.S. thus filed a complaint in this Court on June 4, 2020, seeking, *inter alia*, litigation costs, reasonable attorneys' fees, and any other costs recoverable under the IDEA. [Doc. 1 at ¶ 13].

KCS filed an Answer and Counterclaim [Doc. 6], seeking reversal of the ALJ's determination that KCS failed to provide D.S. with a FAPE in her least restrictive environment. [Doc. 6 at 4]. KCS claimed that the ALJ failed to appropriately make a determination as to whether the IEP proposed by KCS would have provided D.S. with a FAPE. [*Id.* at 5]. KCS also challenged the ALJ's conclusion that Plaintiff's private placement was appropriate and that she was entitled

to tuition reimbursement. [*Id.*]. While Defendant points out that the Plaintiff did not seek "continuing costs of private placement" in the Complaint [Doc. 51 at 1], Defendant's Counterclaim challenged Plaintiff's entitlement to tuition reimbursement. KCS does not contend that the Court lacks jurisdiction to resolve this issue or that it is otherwise outside the scope of the litigation.

## II.      STANDARD OF REVIEW

When a pretrial matter is not dispositive of a party's claim or defense, a district judge may refer the matter to a magistrate judge to hear and decide. Fed. R. Civ. P. 72(a). The magistrate judge must conduct any required proceedings and may, when appropriate, issue a written order stating its decision, to which a party can object within 14 days. *Id.* In those circumstances, the district judge must consider any timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law. *Id.*; 20 U.S.C.A. § 636(b)(1)(A) (district judge "may reconsider any pretrial matter" that a magistrate judge has been designated to hear and determine if a party shows the magistrate judge's order is "clearly erroneous or contrary to law").

When a pretrial matter is dispositive of a party's claim or defense, the district judge may refer the matter to the magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b)(1); *see* 28 U.S.C.A. § 636(b)(1)(B). The magistrate judge must recommend a disposition, including, if appropriate, proposed findings of fact. Fed. R. Civ. P. 72(b)(1). The district judge must then "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C.A. § 636(b)(1) ("A judge of the court shall make *a de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with further instructions. *Id.*

3

Rule 54(d)(2)(D) expressly permits the court to refer a motion for attorney's fees to a magistrate judge "under Rule 72(b) as if it were a dispositive pretrial matter." Fed. R. Civ. P. 54(d)(2)(D); *see Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 946-47 (D.C.C. 2017) ("Rule 54(d)(2)(D) provided that if a district court wished to refer a motion for attorney's fees to a Magistrate Judge, it could do so pursuant to the procedures laid out in Rule 72(b), which include a requirement that the district court review a Magistrate Judge's recommendation regarding a fee award *de novo* if properly objected to.").

However, it is well-established that "[a] general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). In the absence of objection, the district court is not obligated to conduct a *de novo* review of a report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Moreover, "the district court need not provide *de novo* review where the objections are 'frivolous, conclusive, or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (*quoting Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Id.*

## III.   ANALYSIS

### A.  Reimbursement of Costs of Private Placement

In their Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38], Plaintiff seeks reimbursement for D.S.'s tuition at Little River Montessori School for the 2019-2020, 2020-2021, and 2021-2022 school years. [Doc. 38 at 21]. The ALJ

awarded D.S. private tuition and fees in the amount of $7,250 for 2019-2020. [Doc. 34 at 33]. This Court found that reimbursement was appropriate. [Doc. 37 at 27]. Plaintiff asks the Court to update the award to reflect the tuition and costs incurred while this case has been pending: $7,700 for 2020-2021 and $7,700 for 2021-2022. [Doc. 38 at 21-22]. The Magistrate Judge found that reimbursement was appropriate in the amounts requested and recommended that Plaintiff be awarded $15,400 in tuition costs for the 2020-2021 and 2021-2022 school years, resulting in a total reimbursement award of $22,650. [Doc. 50 at 20].

KCS acknowledges that private school tuition is available as a remedy under the IDEA when a court or hearing officer finds that the public agency did not make a FAPE available to the student prior to private enrollment and the private placement is determined to be appropriate. [Doc. 51 at 4; Doc. 42 at 4]. KCS concedes that it must reimburse D.S. for private placement tuition and costs for the 2019-2020 school year, as required by the ALJ's Final Order and this Court's Memorandum Opinion and Order. [Doc. 51 at 4]. It objects, however, to reimbursing D.S. for tuition and costs incurred *after* the ALJ's ruling in her favor on May 7, 2020. [*Id.*]. KCS contends the ALJ's Order "ended D.S.['s] ability to claim further reimbursement of private school." [*Id.* at 4].

The Court has reviewed *de novo* the portions of the Report and Recommendation to which KCS has properly objected.[1] Initially, KCS offers no authority for the proposition that reimbursement is not available following a favorable administrative ruling. Instead, it attempts to distinguish the cases relied on by Plaintiff, *L.H. v. Hamilton County Department of Education*, No. 1:14-cv-126, 2018 WL 6069161 (E.D. Tenn. Nov. 20, 2018) and *Florence County School District Four v. Carter ex rel. Carter,* 510 U.S. 7 (1993), and objects to the Magistrate Judge's analysis of

---

[1] Indeed, the Court has reviewed the parties' original briefing on the Motion, the record in this case, and relevant case law cited by the parties, as well as the Report and Recommendation, Defendant's Objection, and Plaintiff's response.

*School Committee of Burlington v. Department of Education.*, 471 U.S. 359, 370 (1985). [Doc. 51 at 5]. Because this case is largely controlled by *Burlington*, the Court turns to it first.

In *Burlington*, the parents of Michael P. rejected a proposed IEP for the 1979-1980 academic year. *Id.* at 362. After a due process hearing, the hearing officer found that the Town's proposed placement was inappropriate and the private school where the student was enrolled was the least restrictive adequate program within the record for his needs. *Id.* at 363. The hearing officer ordered the Town to pay Michael's tuition and related expenses for the private placement from 1979-1980. *Id.* The Town sought judicial review in the district court and refused to comply with the hearing officer's order. *Id.* After the State threatened to freeze the Town's special education assistance unless it complied, the Town agreed to pay for Michael's private placement for the current academic year, 1980-1981, and to continue paying these expenses until the case was decided. *Id.* at 363-64. It refused, however, to reimburse the parents for the 1979-1980 school year that was originally at issue. *Id.* No IEP was developed for 1980-1981 or 1981-1982. *Id.* at 364. The district court overturned the state administrative decision and held that the Town was not responsible for the cost of private placement for any of the academic years. *Id.* at 364-5. On appeal, the Town argued that because the parents had unilaterally changed Michael's placement during the pendency of the proceedings, they were barred from reimbursement even if they prevailed. *Id.* 366. The Court of Appeals disagreed. *Id.*

The Supreme Court of the United States granted certiorari to consider two questions: (1) whether the relief available under the IDEA includes reimbursement to parents for private tuition and related expenses, and (2) whether the "stay put" provision of the IDEA[2] bars such

---

[2] At the time of the Supreme Court's review, this provision appeared in § 1415(e)(3) of the statute. The relevant wording now appears in § 1415(j) and is substantially identical to the language of former § 1415(e)(3).

Case 3:20-cv-00240-CEA-DCP   Document 53   Filed 03/25/22   Page 6 of 24   PageID #: 4573

reimbursement to parents who reject a proposed IEP and place a child in private school without the consent of local authorities. *Id.* at 367. On judicial review following a due process hearing, §1415(i)(2)(C)[3] authorizes courts to "grant such relief as the court determines is appropriate." The Court observed that a final judicial decision on the merits of an IEP will usually come a year or more after the school term covered by that IEP has passed. *Burlington*, 471 U.S. at 370. "In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement." *Id.* If they choose private placement, "it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials." *Id.* The Court concluded that "by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." *Id.* at 371.

The Court next turned to the Town's argument that the parents waived any right to reimbursement by violating the provision of the IDEA now codified in § 1415(j):

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . .

20 U.S.C. § 1415(j). The Court noted that after the hearing officer's ruling in favor of the family, the private placement "would seem to constitute agreement by the State to the change of placement," and from then on, the parents were not in violation of the stay put provision. *Id.* "This conclusion, however, does not entirely resolve the instant dispute because the [parents] are also seeking reimbursement for Michael's expenses during the fall of 1979," prior to the hearing officer's decision. *Id.*

---

[3] Formerly appeared in § 1415(e)(2) of the statute.

The Court held that a violation of the stay put provision did not constitute a waiver of the right to reimbursement: "We think at least one purpose of [§ 1415(j)] was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." *Id.* at 373. The Court acknowledged that a parent's unilateral decision to move their child to private placement was not without risks: "If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated [§1415(j)]." *Id.* at 374.

As in *Burlington*, D.S. prevailed at the administrative level and was awarded reimbursement for the cost of private placement. And like Michael P., D.S. attended private school and incurred tuition expenses for several years while the litigation continued. But according to KCS, this case can be distinguished from *Burlington* because there, the Town refused to comply with the state agency's order to pay for private schooling. [Doc. 51 at 5]. While true, the facts were a bit more complicated. The Town of Burlington agreed to pay for tuition expenses incurred for academic years *after* the hearing officer's decision, but not before. It later challenged reimbursement for all years, and at one point, the family was ordered to pay back the reimbursement they had received from the Town. Still, the *Burlington* decision appears to resolve KCS's argument by implication. Because the hearing officer's decision in Michael's favor constituted an agreement to change of placement, the Supreme Court found that from then on, the parents were not in violation of the stay put provision and so had not waived reimbursement for subsequent years. *Burlington*, 471 U.S. at 372. The Court moved on to resolve the remaining issue of whether reimbursement was permissible for the academic year before that decision, and found

8

no waiver there either. *Id.* KCS fails to draw relevant distinctions between the reimbursement requested here and that permitted by the Supreme Court's decision in *Burlington*.

In its Objection, KCS also takes issue with Plaintiff's reliance on *L.H. v. Hamilton County Department of Education* and *Florence County School District Four v. Carter*. KCS's argument in this regard is drawn verbatim from its response in opposition to Plaintiff's motion for attorneys' fees and is therefore improper. [*See* Doc. 42 at 4-5]. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection….'" *VanDiver*, 304 F. Supp. 2d at 937. KCS presented this argument to Magistrate Judge Poplin and its reiteration is not entitled to fresh review.

Moreover, the Court finds KCS's attempt to distinguish these cases unpersuasive. KCS argues that *L.H.* and *Florence* do not support reimbursement here, because in both cases, the student lost at the administrative level. [*Id.*]. Their parents were thus left with the choice described in *Burlington*: "go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be appropriate placement." *Burlington*, 471 U.S. at 370. According to KCS, D.S.'s parents were not faced with this choice because the ALJ found in her favor. [Doc. 42 at 5; Doc. 51 at 6]. KCS contends that "[f]rom the moment the ALJ ruled, the possibility of D.S. receiving a FAPE was no longer in question," because the ALJ ruled that that D.S. be placed in her proposed placement and "KCS was willing and able to follow that Order." [*Id.* at 5]. KCS states, without citation to any evidence in the record, that it contacted D.S.'s family to begin planning enrollment for 2020-2021, but they declined. [Doc. 42 at 6].

There are several problems with this argument. First, *Burlington* does not hold that parents cannot be asked to choose between "go[ing] along with the IEP to the detriment of their child if it turns out to be inappropriate or pay[ing] for what they consider to be appropriate placement."

9

*Burlington*, 471 U.S. at 370. Parents assessing an IEP they disagree with are still faced with this choice, and when they unilaterally move their child to private school, they "do so at their own financial risk." *Id.* at 374. Rather, the *Burlington* Court held that unless retroactive reimbursement is available to prevailing parents, "the child's right to a *free* appropriate public education . . . would be less than complete." *Id.* Tuition reimbursement thus arises out of the IDEA's "core guarantee": a free appropriate public education. *See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743 (2017). The parent's choice between financial risk and a potentially inappropriate IEP is not eliminated by *Burlington*. Nor is that choice a test for determining when tuition costs may be reimbursed under the IDEA. That determination is left to the "broad discretion" of the Court, bound only by Congress's direction that such relief be "appropriate."[4] *Burlington*, 471 U.S. at 369.

Second, just like D.S., the student in *Burlington* prevailed at the administrative level. The parents in *Burlington* were faced with the same choice D.S.'s parents faced here, so its holding cannot be avoided on that basis. Third, KCS cites no evidence to support its representation that it attempted to provide D.S. with a FAPE in accordance with the ALJ's Order. Even if true, KCS provides no legal authority to suggest that by rejecting such an offer, D.S.'s parents forfeited the right to tuition reimbursement while KCS challenged the ALJ's decision in federal court.[5] Nor does KCS contend, for example, that it developed or attempted to develop an IEP for D.S. or schedule an IEP meeting for 2020-2021 or 2021-2022. Instead, KCS filed a counterclaim in this action, insisting that the IEP it proposed was appropriate under the IDEA and seeking reversal of the ALJ's order. KCS's appeal of the ALJ's ruling kept the merits of the dispute alive.

---

[4] "Absent other reference, the only possible interpretation is that the relief is to be 'appropriate' in light of the purpose of the Act." *Burlington*, 471 U.S. at 369.

[5] This is also reminiscent of *Burlington*, in which the Town agreed to reimburse Michael's parents for certain years, but continued to litigate the IEP and the student's right to any reimbursement.

The Court finds *L.H. v. Hamilton County Department of Education* to be persuasive on this issue.[6] In *L.H.*, the IEP proposed by the Hamilton County Department of Education staff would have transferred L.H. from a regular education classroom at Normal Park Elementary to a segregated classroom for children with disabilities at a different public school. *L.H. v. Hamilton County Department of Education*, 900 F.3d 779, 786 (6th Cir. 2018). L.H.'s parents rejected the proposed IEP, filed an administrative complaint to challenge the IEP, and enrolled L.H. in a private school, where he remained throughout the litigation. *Id.* at 787-88. The district court found that the IEP proposed for L.H. was more restrictive than necessary for L.H. and therefore improper, but found the private placement did not satisfy the IDEA. *Id.* at 788. Accordingly, the district court held that L.H.'s parents were not entitled to reimbursement. *Id.*

On appeal, the United States Court of Appeals for the Sixth Circuit affirmed the district court's holding that the proposed IEP did not provide L.H. with a FAPE in his least restrictive environment. *Id.* at 796. The court concluded, however, that the alternative private placement did satisfy the IDEA. *Id.* HCDE argued that reimbursement for private placement was not appropriate because L.H.'s parents could have invoked the "stay put" provision of the IDEA, § 1415(j), keeping L.H. at the school where he had previously been enrolled and from which the proposed IEP would have removed him. The Sixth Circuit rejected this argument, finding that L.H.'s parents "had reasoned to be concerned" that the same teachers who had insisted they could not provide the necessary support services to L.H. at his prior school would be "unwilling to teach L.H. under any circumstances." *Id.* at 798. Finding that HCDE denied L.H. a FAPE and that the private placement

---

[6] *Florence County School District Four v. Carter ex rel. Carter* addressed the narrower issue of whether reimbursement is still available for private placement that provides an education that is otherwise proper under the IDEA, but does not meet the requirements of former § 1401(a)(18), *e.g.*, that education be provided at public expense, under public supervision and direction. 510 U.S. 7, 7-8; *see* 20 U.S.C. § 1401(9). The Court has examined this opinion, but as that holding is not implicated here, does not address it in detail.

11

satisfied the IDEA, the Sixth Circuit held that L.H.'s parents were entitled to reimbursement for the private placement. *Id.* at 799. It remanded to the district court for a determination of the amount of reimbursement. *Id.*

District Judge Curtis L. Collier awarded tuition for the entire period that L.H. was enrolled in private school, through the school year during which the opinion was entered. *L.H. v. Hamilton Cnty. Dep't of Educ.*, Case No. 1:14-cv-126, 2018 WL 6069161, *1-*2 (E.D. Tenn. Nov. 20, 2018). HCDE argued that L.H. could not recoup tuition and costs incurred after the Court's determination that the challenged IEP did not provide for L.H.'s least restrictive environment. *Id.* at *3. Similar to Defendant here, HCDE argued that the Court's order "clearly signaled" that "HCDE would, in good faith, follow applicable law if L.H. re-enrolled at an HCDE school." *Id.* HCDE contended that despite this, L.H.'s parents unilaterally continued to enroll L.H. at the private school during the 2016-2018 school years, so they were not entitled to reimbursement. *Id.* The Court rejected this argument, noting that both parties had appealed the Court's decision and the Sixth Circuit determined reimbursement was proper. *Id.* "[I]t does not follow . . . that once a violation of the IDEA is found, a child must be pulled from a private placement and enrolled in public school while the parties appeal the issue of proper school placement." *Id.* And like KCS here, HCDE offered no authority to support such a proposition. *Id.*

Finally, neither KCS nor the Plaintiff have addressed the application of 20 U.S.C. § 1415(j) to the instant case. As set forth above, this subsection provides that unless the State or LEA and parents otherwise agree, "the child *shall* remain in the then-current educational placement" during the pendency of any proceedings conducted pursuant to § 1415. 20 U.S.C. § 1415(j) (emphasis added). To borrow Magistrate Judge Poplin's citation:

> [A]n administrative decision in favor of parents who had placed their child in a private school after they rejected a proposed IEP constitutes an agreement by the

state to the change of the child's placement, making the new, private school placement the current educational placement of the child.

*Houston Indep. Sch. Dist. V. V.P.*, 582 F.3d 576, 591 (5th Cir. 2009); *see also Burlington*, 471 U.S. at 371-72. If Little River became D.S.'s current educational placement following the ALJ's Order, a plain reading of 20 U.S.C. § 1415(j) suggests that she could not be moved absent the agreement of both KCS and the parents. If parents cannot waive the right to reimbursement by unilaterally placing their child in private school, it makes little sense that they could do so by keeping their child in her current educational placement, as expressly contemplated by the § 1415(j). This is not to say that retroactive reimbursement for the duration of the litigation is always "appropriate" relief; only that it cannot be categorically unavailable following an ALJ ruling in the student's favor.

There is no question that "[w]hile pursuing a challenge to an IEP, the parents may unilaterally remove the student from public school, place the child in a private school, and seek reimbursement for the cost of the private school." *Burlington*, 471 U.S. at 369-70 (cleaned up). In order to award reimbursement, "the State ALJ or district court must find both that: (1) the public school violated the IDEA and (2) the private school is appropriate under the IDEA." *L.H.*, 900 F.3d at 791. Those requirements have all been met here.

KCS has offered no authority for the proposition that a student's right to private placement reimbursement ends with an administrative decision in her favor. Nor has it shown that *L.H.*, *Florence*, or *Burlington* are distinguishable in material respects. To the contrary, *L.H.* and *Burlington* offer persuasive examples of why a student's placement under the IDEA should not be based on the shifting sands of active litigation. On a practical level, transitioning a child with special needs from one school to another while the parents and the LEA dispute what the IDEA requires threatens profound disruption to the student's education and development. And as the

13

Supreme Court found in *Burlington*, it would be an "empty victory" for D.S.'s parents to prevail, as they have here, only to find they must pay out of pocket for what the IDEA guarantees at no cost: a *free* appropriate public education.

The Court has reviewed *de novo* Magistrate Judge Poplin's recommendation that D.S. be awarded the costs of tuition for 2020-2021 and 2021-2022, in addition to the costs previously awarded for 2019-2020. Due to the unique procedural posture of this issue, the Court has further reviewed *de novo* the parties' briefing regarding continuing tuition costs, as well as the relevant cases cited by the parties and the record in this case. The Court has already held that KCS violated the IDEA and that D.S.'s placement at Little River Montessori School was appropriate under the IDEA. [Doc. 37 at 2, 26-27]. In light of the purposes of the statute, the Court finds that reimbursement of D.S.'s tuition and costs for 2019-2020, 2020-2021, and 2021-2022 is appropriate relief pursuant to § 1415(i)(2)(C)(iii) of the IDEA. The Court further finds that the amount requested is reasonable.

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Poplin's recommendation that D.S. be awarded the costs of tuition for 2020-2021 and 2021-2022. KCS's Objection to this aspect of the Report & Recommendation is **OVERRULED**.

Plaintiff's Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] is **GRANTED** in this regard and Plaintiff is awarded tuition costs in the total amount of $22,650 for academic years 2019-2020, 2020-2021, and 2021-2022.

### B. Attorneys' Fees & Costs

The Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] seeks attorney's fees and costs in the amount of $78,314.49 for attorney Justin Gilbert. This amount reflects 170.75 hours billed at $450 per hour for a total of $76,837.50 in

attorney's fees, plus $1,476.99 in costs. [Doc. 38-1 at 10]. The Motion seeks attorney's fees and costs in the amount of $68,812.88 for attorney Jessica Salonus. This amount reflects 190 hours billed at $300 per hour, plus 25 hours billed at half-rate for travel time ($150 per hour), for a total of $60,750 in attorney's fees, plus $8,062.88 in costs. [Doc. 38-2 at 8].

In their response in opposition to the Motion, KCS argued (i) that Plaintiff achieved only a partial victory and her attorneys' time should be reduced accordingly, (ii) that counsels' hourly rates were unreasonable, and should not exceed $250 for Ms. Salonus and $275 for Mr. Gilbert, (iii) that the billing records include duplicative time, and (iv) that the fees requested should be further reduced by 15% overall due to the use of quarter hour billing and inclusion of clerical work. [Doc. 42].

First, Magistrate Judge Poplin declined to recommend that counsel's fees be reduced to reflect a partial victory, since all claims arose out of a common set of facts and Defendant did not identify specific hours that should be reduced. [Doc. 50 at 7]. Second, the Magistrate Judge recommends that Attorney Gilbert be awarded $425 per hour and Attorney Salonus be awarded $290 per hour, a reduction of the rates requested by Plaintiff. [*Id.* at 11]. Third, Judge Poplin recommends that 2.0 hours be deducted from Mr. Gilbert's time and 3.0 be deducted from Ms. Salonus's time as duplicative. [*Id.* at 14]. Both entries reflect counsel's attendance at a deposition taken or defended by their co-counsel. [*Id.*]. The Report and Recommendation does not recommend further reductions for the time each attorney spent preparing for depositions, or for the attendance of both counsel at the due process hearing. [*Id.* at 14-15]. Magistrate Judge Poplin further found that the time each attorney billed for preparing pleadings was reasonable and not duplicative, and therefore declined to recommend any reductions there. [*Id.* at 15].

15

Next, Magistrate Judge Poplin rejected Defendant's argument that Mr. Gilbert and Ms. Salonus's billed time should be reduced by 15% due to their use of quarter-hour billing. Judge Poplin noted counsel's use of software to track their time, Ms. Salonus's averment that less than 15 minute tasks were often not recorded, and other evidence that counsel had not requested all their compensable time. [*Id.* at 18]. Finally, Magistrate Judge Poplin found that of the seven entries that allegedly include clerical time, most also included legal functions appropriately conducted by an attorney or were for insignificant amounts of time. [*Id.* at 19].

Knox County objects to the fee award in several respects. First, it contends that an hourly rate of $425 for Mr. Gilbert exceeds the market rate necessary to encourage competent lawyers to undertake this type of representation. [Doc. 51 at 3]. It does not object to the recommended hourly rate of $290 for Ms. Salonus. KCS's second objection is that Ms. Salonus and Mr. Gilbert's time should be further reduced due to duplicative work. [*Id.* at 6-11]. Specifically, Defendant points to allegedly duplicative work for depositions, hearings, witness prep, and preparation of pleadings. [*Id.*].

### 1. Recommendations Without Objection

KCS does not object to the recommendation that D.S.'s attorney's fees not be reduced in light of her partial victory, nor does it object to the recommendation that counsel's hours not be reduced by an overall percentage due to the use of quarter-hour billing and inclusion of allegedly clerical tasks. [Doc. 51 at 2]. KCS also does not object to the recommended hourly rate of $290 for Ms. Salonus. [*Id.* at 51]. In the absence of objection, these issues are not entitled to *de novo* review. *See Thomas v. Arn*, 474 U.S. 140, 148-51 (1985).

Nevertheless, the Court has reviewed the parties' briefing and the record in this case and agrees with Magistrate Judge Poplin's well-reasoned conclusions. In a related context, the Sixth

Circuit has explained: "[A] civil-rights plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to become a prevailing party." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552-53 (6th Cir. 2014). Plaintiff brought claims under the ADA, Section 504, and IDEA, all based on the same nucleus of facts. Each of these statutes protects the interests of children with disabilities. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 746 (2017). Here, counsel prevailed on D.S.'s challenge to Knox County's proposed IEP, vindicating her right to a FAPE in her least restrictive environment, and obtained tuition reimbursement for her private placement. The Court has no trouble concluding that this relief is significant in relation to the hours counsel reasonably expended in this litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Similarly, the Court agrees that Ms. Salonus and Mr. Gilbert's use of quarter-hour billing does not require a reduction in their compensable time. As the Magistrate Judge acknowledged, quarter-hour billing is disfavored by some courts. In this case, however, there is evidence that counsel rounded down to reduce billing entries for small tasks and to ensure accuracy. [Doc. 38-1 at ¶ 32; Doc. 38-2 at ¶ 21]. Both attorneys also use billing software, and it is their standard practice to keep time in quarter hours. [*Id.*]. Accordingly, the Court agrees that an across the board cut due to the use of quarter-hour billing is not appropriate.

Finally, the Court agrees with and adopts the Magistrate Judge's recommendation of $290 as Ms. Salonus's hourly rate. Plaintiff submitted evidence that Ms. Salonus's requested rate of $300 per hour has been used to calculate her fees in other settlements. [Doc. 38-2 at ¶ 18]. Ms. Salonus was awarded $275 per hour in *L.H. v. Hamilton County Department of Education* in 2019. [*Id.* at ¶ 19]. Magistrate Judge Poplin's recommended rate of $290 reflects an appropriate increase from Ms. Salonus's fee in that case. This rate reflects reasonable compensation given the

complexity of the case and Ms. Salonus's expertise in this area, and is sufficient to attract competent lawyers to undertake the representation in question while not being excessive.

The Magistrate Judge inadvertently omitted from her recommended compensation the amount Ms. Salonus billed at half-rate for travel time. Accordingly, the Court has reviewed this aspect of Plaintiff's fee request *de novo*. Defendant's opposition to Ms. Salonus's fee request does not challenge compensation for these hours, only the rate. This time is properly documented and fees will be awarded at the modified rate of $145 per hour, reflecting half of Ms. Salonus's $290 hourly rate. Accordingly, Ms. Salonus will be awarded $57,855 in attorney's fees, representing 187 hours billed at $290 per hour and 25 hours billed at half rate for travel time ($145 per hour), plus $8,062.88 in costs, for a total award of $65,917.88.

2. Objection to Hourly Rate of Mr. Gilbert

Plaintiff's Motion for Attorneys' Fees [Doc. 38] requests an hourly rate of $450 for Mr. Gilbert. In support of this rate, Mr. Gilbert filed a Declaration [Doc. 38-1] indicating that he has practiced law for 26 years, focusing in the area of special education. [*Id.* at ¶ 29]. Mr. Gilbert shows that he was awarded fees at a rate of $400 per hour in 2019, in the *L.H. v. Hamilton County Department of Education* case. [*Id.*]. Plaintiff also submitted the Declaration of Dean Hill Rivkin, opining that the fees requested "fall well within the customary fees charged by lawyers with comparable credentials." [Doc. 38-4 at ¶ 15(d)]. Dean Rivkin explains that "no ordinary market exists for special education lawyers in Tennessee," so he believes that the "key criterion here is to recognize a rate that will attract lawyers to this highly specialized and complex area of public interest practice." [*Id.*]. Dean Rivkin is a Professor in Law Emeritus at the University of Tennessee College of Law in Knoxville, Tennessee, and has extensive experience litigating complex federal cases, including those under the IDEA. [*Id.* at ¶ 3]. He served as Director of the UT Legal clinic,

and from 2004-2009 directed a project at UT Law School related to representation of families in education cases, predominately special education cases. [*Id.*].

Plaintiff also submits the Declaration of Donna Mikel, an experienced attorney in this district whose practice focuses on employment litigation and civil rights cases for individuals. [Doc. 38-5 at ¶ 2]. Ms. Mikel has been practicing law for 22 years and has practice extensively in the Eastern District of Tennessee. [*Id.* at ¶ 3]. She indicates she does "not know of any other practitioners in Chattanooga or Knoxville who regularly handle IDEA cases in the Eastern District for parents of children with disabilities." [*Id.* at ¶ 9]. Ms. Mikel notes that full contingency-based cases where there are no compensatory damages to be recovered and the attorney is seeking to obtain only time spent under a fee-shifting statute are "extremely risky." [*Id.* at ¶ 10]. When she accepts cases on a full contingency basis and prevails under a fee-shifting statute, Ms. Mikel seeks reimbursement of $400 per hour as of 2021. [*Id.* at ¶ 15]. Her last reported fee award was in 2018, when, as an attorney with 18 years' experience, she was awarded $350 per hour, while her co-counsel with 15 years' experience was awarded $300 per hour. [*Id.*].

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The Sixth Circuit "presume[s] that the 'lodestar amount' – the number of hours worked times a reasonable hourly rate – amounts to a reasonable fee." *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018). "'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for attorneys." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

19

In calculating a reasonable hourly rate for the purposes of a lodestar calculation, the Court must assess the "prevailing market rate in the relevant community." *Id.* at 350 (quoting *Blum v. Stenson*, 465 U.S. 886 (1984)). "[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), *abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016). Fee-shifting statutes provide for reasonable fees, not liberal fees. *Id.*

Based on these principles, Magistrate Judge Poplin recommends that Mr. Gilbert be awarded $425 per hour for the work performed in this case. The Report and Recommendation notes that former Magistrate Judge Guyton recently recommended this rate for Mr. Gilbert in a similar case, finding Defendant's suggested rates too low and Plaintiff's too high for this District. [*Id.* at 11]; *see Knox County v. M.Q.*, 3:20-cv-173, Doc. 43. In light of Mr. Gilbert's award of $400 per hour in *L.H.*, Magistrate Judge Poplin found an award of $425, reflecting an increase of approximately 3% per year, to be reasonable. KCS objects to this recommendation, raising the same arguments it raised in response to Plaintiff's motion. Indeed, the bulk of Defendant's objection in this regard is pulled nearly verbatim from its response in opposition to the motion. [*See* Doc. 42 at 8-11; Doc. 51 at 3-4].

Courts in the Sixth Circuit have routinely held that objections that merely restate the arguments previously presented are improper. *See United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, *1 (E.D. Ky. April 11, 2017) ("Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") (cleaned up); *United States v. Bowers*, No. 0:06-cv-7, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017) ("Where an

objection is simply a repetition of what the Magistrate Judge has already considered, it fails to put the Court on notice of any potential errors in the Magistrate's R&R.") (cleaned up); *see also United States v. Evans*, Civ. Act. No. 17-127, Crim. Act. No. 13-22, 2019 WL 1077371, *4 (March 7, 2019) ("A mere disagreement with the Magistrate Judge's conclusion is not an objection as required by the Federal Rules of Criminal Procedure.").

Nonetheless, the Court has reviewed *de novo* Magistrate Judge Poplin's recommendation that Mr. Gilbert be awarded fees at an hourly rate of $425, as well as the parties' briefs, supporting materials, Defendant's Objection, and Plaintiff's Response.[7] The Court finds that $425 is a reasonable hourly rate for Mr. Gilbert in this case in light of the prevailing market rate in the community for similar representation and Mr. Gilbert's experience and skill in this highly specialized area. The declarations of Dean Rivkin and Donna Mikel support this finding. Importantly, Ms. Salonus and Mr. Gilbert accepted this case on a full contingency fee basis. [*See* Doc. 38 at 14]. Other than Mr. Gilbert and Ms. Salonus, Donna Mikel attests that she is aware of no other practitioners in Chattanooga or Knoxville who regularly handle parent-side IDEA cases in this district. [Doc. 38-5 at ¶ 9]. This further supports a slight upward adjustment from the $400 hourly rate previously approved for Mr. Gilbert in *L.H.*

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Poplin's recommendation that Mr. Gilbert be compensated at a rate of $425 per hour for his work in this case. The Court finds this rate consistent with the market rates in the community for similarly complex work and sufficient, but not more than necessary, to attract competent counsel to

---

[7] The Court notes that in its response in opposition, KCS contended that the prevailing market rate in the Eastern District of Tennessee is between $250 to $275. [Doc. 42 at 9]. In support of this statement, KCS relies in part on cases from 2009 and 2006. [*Id.* at 9-10]. These citations are not persuasive on the issue of the current prevailing market rate for similarly complex litigation.

undertake this type of representation. KCS's objection to this portion of the Report and Recommendation is **OVERRULED**.

    3.  <u>Objection to "Duplicative" Billing</u>

Plaintiff's Motion for Attorneys' Fees [Doc. 38] seeks compensation for time billed by both Ms. Salonus and Mr. Gilbert for work on the same or similar tasks. For example, both attorneys prepared for and attended certain depositions, prepared for and attended the due process hearing, and worked on briefing and findings of fact in this case. KCS objects to compensation for these tasks at the full hourly rate, contending these entries are duplicative. With respect to depositions and hearings, KCS asserts that the hours of the attorney who did not address the witness or tribunal but attended the hearing should be reduced by 50%. [Doc. 51 at 9]. It asserts that when both counsel billed for preparing pleadings, their hours should be reduced by 50%. [*Id.*].

On this topic, KCS's objection to the Report and Recommendation is a repackaged version of the arguments and law already presented in opposition to the Motion. [*See* Doc. 42 at 12-16; Doc. 51 at 6-11]. KCS does not raise a specific objection to this part of the Report and Recommendation, but simply disagrees with Magistrate Judge Poplin's recommendation that no further time be deducted. As explained above, pressing an argument already presented without raising a specific objection is insufficient to trigger *de novo* review under Federal Rule of Civil Procedure 72(b).

Nonetheless, the Court has reviewed *de novo* the Magistrate Judge's recommendation that only 3 hours be deducted from Ms. Salonus's time and only 2 hours be deducted from Mr. Gilbert's time for attendance at a deposition that the other attorney was taking or defending. The Court agrees that based on the length of the depositions, this time should be reduced. The Court further agrees that no further reductions are appropriate based on allegedly duplicative time. The fact that

both attorneys worked on a matter does not *ipso facto* render their work or their billing duplicative. The due process hearing was a three-day evidentiary hearing involving multiple witnesses and numerous exhibits. In this context, the assisting attorney plays a critical role in assessing the evidence presented and testimony elicited, spotting new or undeveloped issues, developing legal arguments and strategy as the trial evolves, and managing the questions and expectations of the client. The amount of collaboration and time spent on the pleadings are similarly unexceptional in light of the issues presented. Beyond the fact of counsel's collaboration, there is no indication of excessive billing.

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Poplin's recommendation that 3 hours be deducted from Ms. Salonus's time and 2 hours be deducted from Mr. Gilbert's time. The Court agrees that further deductions are inappropriate. KCS's Objection is **OVERRULED** in this regard, and Plaintiff's Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] will be **GRANTED IN PART** and **DENIED IN PART**.

### C. Conclusion

Accordingly, Defendant's Objection to the Report and Recommendation [Doc. 51] is **OVERRULED.** After *de novo* review of all matters to which Defendant has objected, the Court **ACCEPTS** and **ADOPTS IN PART** Magistrate Judge Poplin's findings of fact and conclusions of law as set forth in the Report and Recommendation. [Doc. 50]. The only modification to Judge Poplin's recommendations is that the attorney's fee award for Ms. Salonus will be increased to include the 25 hours Ms. Salonus billed at half-rate for travel time.

Plaintiff's Motion and Memorandum for Attorneys' Fees & Continuing Costs of Private Placement [Doc. 38] is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Attorney Justin Gilbert is **AWARDED** fees at a rate of $425 per hour. Two hours are deducted from his billed time. Mr. Gilbert is therefore awarded $425 per hour for 168.75 hours, resulting in an award of **$71,718.75** in attorney's fees, plus costs in the amount of **$1,476.99**, for a total award of **$73,195.74**.

- Attorney Jessica Salonus is awarded fees at a rate of $290 per hour. Three hours are deducted from the 190 hours billed at her full rate. Ms. Salonus is therefore awarded $290 per hour for 187 hours, plus $145 per hour for 25 hours (half rate for travel time), resulting in an award of **$57,855** in attorney's fees, plus costs in the amount of **$8,062.88**, for a total award of **$65,917.88**.

- Plaintiff is **AWARDED** tuition costs for the 2020-2021 and 2021-2022 school years in the amount of $7,700 per year, for a total award of **$22,650** for academic years 2019-2020, 2020-2021, and 2021-2022.

- Defendant is **ORDERED** to pay Plaintiff the amounts specified herein.

A separate judgment order will enter.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE